UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-CV-12003-RGS

McGOVERN PHYSICAL THERAPY
ASSOCIATES, LLC, as assignee of PIP benefits
due John Doe, on behalf of itself
and all others similarly situated

v.

METROPOLITAN PROPERTY
& CASUALTY INSURANCE COMPANY

MEMORANDUM AND ORDER ON MOTION
TO DISMISS SECOND AMENDED COMPLAINT

July 29, 2011

STEARNS, D.J.

Plaintiff McGovern Physical Therapy Associates, LLC (McGovern) brought this lawsuit on behalf of itself and all other assignees of statutory Personal Injury Protection (PIP) benefits paid to insureds whose Massachusetts automobile coverage is underwritten by Metropolitan Property & Casualty Insurance Company (Metropolitan). McGovern contends that Metropolitan arbitrarily refuses to fully reimburse the medical bills incurred by its insureds when they exceed "provider charges within the provider's geographic region" (usual and customary charges) and without reviewing the bills for their "reasonableness," as required by Mass. Gen. Laws ch. 90, § 34M. In this regard, McGovern alleges that Metropolitan's use of Ingenix databases to conduct "fee audits"

as a substitute for a physical examination of the patient and/or an individualized review of his or her medical records by a qualified practitioner violates Metropolitan's "duty" to pay reasonable bills. Because the Massachusetts state appellate courts have yet to definitively consider the issue, McGovern suggests that this court certify the question of the legality of Metropolitan's practice to the Massachusetts Supreme Judicial Court (SJC).

Metropolitan moves to dismiss, asserting that McGovern's claims fail as a matter of law, namely that: (1) there is no statutorily required "reasonableness review" of its PIP reimbursements by a licensed practitioner; (2) the substitute comparison of the amount billed with customary provider charges within the same geographic area fully complies with section 34M; (3) the Explanation of Benefits (EOB) it gives to McGovern and other providers is statutorily sufficient to serve as a challenge to the reasonableness of a submitted bill; (4) contrary to McGovern's assertion, there is no presumption that a provider's charges are reasonable; and (5) that a recent Third Circuit decision in "an identical case" dispels any notion that use of auditing databases violates the PIP statute or insurance contracts.

## BACKGROUND

McGovern is a Massachusetts limited liability company providing physical

therapy services to patients injured in automobile accidents.[1]  Metropolitan issues automobile insurance policies to Massachusetts drivers.  McGovern treated a Metropolitan insured (John Doe) for injuries he sustained in a July 7, 2007 automobile accident.

Under the Massachusetts "no fault" automobile insurance scheme, an insurer must provide PIP coverage to its insureds for "all reasonable expenses incurred within two years from the date of the accident for necessary medical, surgical, x-ray and dental services . . . and necessary ambulance, hospital, professional nursing and funeral services . . . ."  Mass. Gen. Laws ch. 90, § 34A.  Section 34M provides that

> [p]ersonal injury protection benefits and benefits due from an insurer assigned shall be due and payable as loss accrues, upon receipt of reasonable proof of the fact and amount of expenses and loss incurred . . . .  [N]o insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under the provisions of chapter one hundred twelve, if such refusal is based solely on a medical review of the bill or of the medical services underlying the bill, which review was requested or conducted by the insurer, unless the insurer has submitted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of chapter one hundred and twelve as the practitioner who submitted the bill for medical services.

On October 12, 2007, McGovern submitted a request for payment (RFP) to

---

[1] The court construes those facts plausibly pled in the Complaint in the light most favorable to McGovern as the nonmoving party.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

Metropolitan for physical therapy services it provided to Doe on September 4, 2007. The RFP was supported by the associated medical bills and treatment records. McGovern requested an aggregate payment of $176.00. Metropolitan submitted the RFP to a third-party "software audit." The third-party reviewer analyzed the Doe RFP by using the Ingenix databases.[2] On October 15, 2007, Metropolitan paid McGovern $142.58, that is, $34.42 less than the submitted RFP, explaining only that "[t]he amount allowed is based on provider charges within the provider's geographic region."

McGovern, on behalf of itself and others, seeks to be reimbursed in full for its RFPs in all instances in which Metropolitan has failed "to challenge the [RFP] on its

---

[2] Ingenix, a subsidiary of UnitedHealth Group, created its databases by compiling information reflecting the "usual and customary" charges for given medical services within certain defined geographic areas. "Ingenix divides all states, including Massachusetts, into 'geo-zips' composed of cities and towns sharing three-digits of postal zip codes, which are grouped together by not only geographical proximity, but also by what Ingenix decides are 'data similarities.'" *Michael Davekos, P.C. v. Liberty Mut. Ins. Co.*, 2008 WL 241613, at *1 n.4 (Mass. App. Div., Jan. 24, 2008).

McGovern alleges that the Ingenix databases contain internal biases and distortions as: (1) all of the data compiled by Ingenix is supplied by the entities that purchase Ingenix's products, which forms a "'closed loop' of information" between Ingenix and the insurers; (2) these entities often withhold "data reflecting higher medical charges" without determining their reasonableness ("pre-scrubbing"); and (3) Ingenix itself admits to using statistical "'scrubbing' methods to remove higher charges from its databases without any analysis as to the reasonableness of the charge (scrubbing data)." Second Am. Compl. ¶ 13.

4

merits." McGovern's Second Amended Complaint is set out in six counts: Count I - Breach of Contract - No Finding That Charges Were Unreasonable; Count II - Breach of Contract - No Physical Examination or Medical Review; Count III - Violation of Mass. Gen. Laws ch. 90, § 34M (invalid basis for denial of benefits); Count IV - Violation of Mass. Gen. Laws ch. 90, § 34M (insurer failed to use appropriate criteria in reviewing charges for reasonableness); Count V - Breach of the Covenant of Good Faith and Fair Dealing (implied on the contract alleged in Count I); and Count VI - Violation of Mass. Gen. Laws ch. 93A, § 11 (unfair trade practices). In addition to its motion to dismiss, Metropolitan moves to dismiss or strike the class allegations contained in the Second Amended Complaint.

## DISCUSSION

To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Twombly*, 550 U.S. at 559. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations and quotations omitted). *See also Rodríguez-Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir. 2007). Dismissal for failure to state a claim will be appropriate if the pleadings fail to set forth "'factual allegations, either

direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997), quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). In ruling on a motion to dismiss, the court may look to documents the authenticity of which are not disputed by the parties, to documents central to the plaintiff's claim, and to documents referenced in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). "[T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations. While this may mean that a civil plaintiff must do more detective work in advance, the reason is to protect society from the costs of highly unpromising litigation." *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999).

As a preliminary matter, the court declines McGovern's invitation to certify any case-dispositive issues of statutory determination to the SJC, particularly those requiring the interpretation of Chapter 90, § 34M. The plain language of Chapter 90, §§ 34A and 34M, and the relevant opinions of the Massachusetts lower courts "provide sufficient guidance" to this court to insure that its decision will not be "merely conjectural." *Boston Car Co. v. Acura Auto. Div., Am. Honda Motor Co.*, 971 F.2d 811, 817 n.3 (1st Cir. 1992). The court is also mindful of the rule that certification to a state Supreme Court is not something to be undertaken lightly by a lower federal

court. *See In re Engage, Inc.*, 544 F.3d 50, 53 (1st Cir. 2008) ("[E]ven in the absence of controlling precedent, certification would be inappropriate where state law is sufficiently clear to allow [federal courts] to predict its course."). *Cf. González Figueroa v. J.C. Penney Puerto Rico, Inc.*, 568 F.3d 313, 323 (1st Cir. 2009) ("Certification of questions of local law from one court to another is, by its very nature, a cumbersome and time-consuming process. The use of that device stops a case in its tracks, multiplies the work of the attorneys, and sharply increases the costs of litigation. Not surprisingly, then, we have held with monotonous regularity that certification is inappropriate when the course that the state courts would take is reasonably clear.").

**Reasonableness of the Charges**

Underpinning each of McGovern's claims is the assertion that section 34M requires review by a licensed practitioner, or a physical examination of the patient, where there is a dispute over the reasonableness of the charges. A more plausible reading of the language of section 34M, both from a grammatical and public policy perspective, is the one offered by Metropolitan, namely that the practitioner's review requirement attaches only when an insurer denies payment based upon an alleged lack of medical necessity for the services provided. Section 34M specifies that the insurer must submit the bill for a practitioner's review if payment is refused and "if such refusal is based *solely* on a medical review of the bill or of the medical services

7

underlying the bill." (Emphasis added).[3]

McGovern ripostes that Metropolitan's "approach excludes any and all information peculiar to the particular patient, to the patient's specific injuries and conditions, to the actual provider's training and experience, to the specific services provided, and to the provider's overhead costs, whereas the statutory approach requires just the opposite." Opp'n Mem. at 6-7. "Aside from the statutory language itself, it would be utterly nonsensical for the Legislature to prohibit an insurer from denying coverage solely on the basis of a medical review by a registered or licensed provider (albeit not in the same specialty) but allow an insurer to deny coverage solely on the basis of an automated fee audit without any medical input whatsoever." *Id*. at 10.

The net that McGovern casts is intended to capture both PIP fee disputes and reviews of fee denials in its craw. Metropolitan, it must be remembered, has not denied McGovern's claim for the services rendered to Doe – rather it has reduced the amount reimbursed for the listed service. Metropolitan does not challenge McGovern's diagnosis or treatment choice for Doe. It differs only with McGovern over the appropriate rate to be charged. To read the statute as requiring a formal (and

---

[3] Metropolitan also challenges McGovern's assertion that because it submitted "reasonable proof" of its charges – that is, copies of the medical bills – in a timely fashion, those bills are presumed reasonable and necessary. As will be seen, the presumption is incorrect.

8

prohibitively expensive) medical review of a marginal fee dispute like this one by a licensed practitioner would convert a statute intended to squeeze such disputes out of the vehicle tort system into a blanket invitation to providers to submit inflated or fraudulent billings.[4]

The SJC's analysis of the statute in *Boone v. Commerce Ins. Co.*, 451 Mass. 192 (2008), while not directly on point, leads inescapably to the same conclusion.[5] In reviewing section 34M's "same profession requirement," the *Boone* Court began with the familiar canon of statutory construction that "'every word in a statute should be given meaning' and no word is considered superfluous." *Id.* at 196, quoting *Matter of*

---

[4] To take a simple example: would the Legislature, in seeking to expedite the payment for the treatment of minor motor vehicle injuries, seriously be thought to have contemplated requiring the services of a neurologist to resolve a $40 dispute over the appropriate billing for a CT-SCAN?

[5] *Boone* addressed the issue of whether section 34M prohibits an automobile insurer from *terminating* PIP benefits based on an independent medical examination (IME) performed by a practitioner licensed in a specialty different than the one of the treating practitioner. A Justice of the Superior Court, concluding that it did, granted summary judgment to the plaintiff. The Appeals Court affirmed. *Boone v. Commerce Ins. Co.*, 68 Mass. App. Ct. 354, 354-355 (2007). The SJC emphatically reversed, noting that the language, purpose, and legislative history of section 34M supported the common-sense conclusion that so rigid a reading of the statute is incompatible with the Legislature's purpose of reforming a system mired in necessary complexity. "We interpret § 34M to create 'as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature.'" *Boone*, 451 Mass. at 197 n.6, quoting *Mailhot v. Travelers Ins. Co.*, 375 Mass. 342, 345 (1978).

*a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, 372 Mass. 353, 358, (1977). In reversing the lower court decisions, the SJC held that

> the word "solely" limits the application of the same profession requirement to circumstances where insurers challenge bills *solely* on the basis of a "medical review of the bill or the medical services underlying the bill." G.L. c. 90, § 34M. A medical review is a "submission of bills and medical records to a practitioner without a physical examination of the PIP claimant" to determine if the charges are reasonable and the treatment is necessary. In contrast, a "physical examination" involves a claimant undergoing a medical examination by a physician selected by the insurer. Because Commerce's refusal to pay is based on an IME rather than a medical review of the bill or the medical services underlying the bill, we conclude that the plain language of the statute makes the same profession requirement inapplicable. . . . "[W]hen the Legislature has employed specific language in one part of a statute, but not in another part which deals with the same topic, the earlier language should not be implied where it is not present."

*Boone*, 451 Mass. at 196 (internal citations omitted). In defining "medical review" and "physical examination," the *Boone* decision made clear that these terms encompass something entirely different than a fee review. The SJC, as a result, held that a "medical review" is only appropriate to determine "if the charges are reasonable *and* the treatment is necessary." Because the insurer's refusal to pay in *Boone* was based on the results of an IME, the SJC found that the section 34M provision for a review by a "same professional" was "inapplicable." Here the dispute is even simpler: all that is at issue is the value of the services, not their necessity. Hence there is no requirement in the statute of a "same professional" review of Doe's records.

The Massachusetts Appellate Division's opinion in *Nhem v. Metro. Prop. & Cas. Inc. Co.*, 1997 WL 321374, at *2 (1997 Mass. App. Div. June 4, 1997)[6] is on point. In that case, Metropolitan made partial payment ($49.00) of a $60.00 charge for an "exit examination." Nhem then filed a complaint alleging that Metropolitan's refusal was in violation of section 34M and that he was entitled to payment of the $11.00 at issue, plus his costs and attorney's fees. After a trial, the state District Court found that Nhem had failed to establish that Metropolitan had refused to pay his "reasonable" medical expenses, and entered judgment for Metropolitan. Nhem's contention on appeal was that Metropolitan had breached its contract of insurance in violation of section 34M by refusing to pay the full $60.00 charge without first having submitted the bill and underlying medical records to a licensed chiropractor for a "medical review." The Appellate Division's opinion bears quotation at length for the pertinence of its logic.

> Nhem's argument is predicated on a misreading of that portion of *G. L. c.* 90, § 34M which provides:
>
> > "[N]o insurer shall refuse to pay a bill for medical services submitted by a practitioner registered or licensed under the provisions of chapter [112], if such refusal is based solely on

---

[6] While Metropolitan notes that the Massachusetts Appeals Court summarily affirmed the *Nhem* decision, Massachusetts Appellate Practice Rule 1:28 prohibits citation of any pre-2008 summary rulings.

11

> a medical review of the bill, which review was requested or conducted by the insurer, unless the insurer has submitted, for medical review, such bill or claim to at least one practitioner registered or licensed under the same section of chapter [112] as the practitioner who submits the bill for medical services . . . [emphasis supplied]."

The language of the statute is clear and unambiguous and must be given its ordinary meaning. *Elm Shank & Heel Co. v. Comm.*, 401 Mass. 474, 477, 517 N.E.2d 460 (1988). *Brito v. Liberty Mut. Ins. Co.*, 1996 Mass. App. Div. 63, 65. The provision unequivocally requires an insurer to submit a bill for a "medical review" or a peer review by another licensed medical practitioner only when the insurer has refused to pay such bill and the refusal is "based solely" on the results of a medical review conducted by the insurer. Contrary to Nhem's almost specious contention, the statute in no way requires a medical review of every bill which an insurer refuses to pay or, as in the instant case, of every bill for which the insurer makes only a partial payment of the reasonable amount thereof. Nhem's erroneous interpretation of the statute would reduce the clause "if such refusal is based solely on a medical review of the bill" to mere surplusage in violation of all canons of statutory construction.

It is clear from the record on this appeal that the $60.00 exit examination bill was never submitted for a "medical review" conducted or requested by Metropolitan to determine the medical necessity of the service provided. It is equally clear that Metropolitan's partial payment was not "based solely on a medical review" of such bill. The provision of Section 34M relied upon by Nhem herein was thus patently irrelevant, and the trial judge properly ruled in response to Nhem's request number 5 that the partial payment of Dr. Donahue's final bill did not require a medical review by a licensed chiropractor.

*Id.*, at *2.

McGovern argues that a later decided case, *Howard Physical Therapy, Inc. v.*

*Premier Ins. Co.*, 2010 WL 3855302 (Mass. App. Div. Sept. 23, 2010), implicitly overrules *Nhem*. In *Howard*, the insurer reduced plaintiff's PIP claim for medical expenses on the basis of a "review by an outside company." Citing the same portion of section 34M as the court in *Nhem*, the *Howard* panel found that

> there is no indication that Premier submitted these bills for the type of review provided for in the statute. In the absence of any demonstration of such review, the summary judgment burden never shifted to Howard to make a response. Second, since the type of review conducted by Premier was not a valid reason for refusing to pay the full amount of the bills submitted, summary judgment would not have been justified on this basis either.

*Id.*, at *2. While superficially at odds with *Nhem*, the decision in *Howard* is unsatisfying as it never specifies the "type of review" that was performed by the unidentified "outside company." More to the point, the court in *Howard* never suggested that the holding in *Nhem* was being overruled or impugned in any respect.[7]

McGovern's fallback argument maintains that once an insurer receives a properly documented claim, it is required to either activate a practitioner review or

---

[7] Metropolitan also makes the accurate observation that Counts III and IV fail because section 34M does not authorize an independent right of action for violation of its provisions. Metropolitan notes that instead the Legislature provided for a specific contractual remedy – that after thirty days, a party to whom PIP benefits are owed under Section 34M "can file an action in contract 'for payment of amounts therein determined to be due . . . .'" *Fascione v. CNA Ins. Cos.*, 435 Mass. 88, 91 (2001). *See also Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979); *Salvas v. Wal-Mart Stores, Inc.*, 452 Mass. 337, 373 (2008).

13

make the full PIP payment within 30 days of the receipt of the proof of claim.[8]

McGovern pins this contention on a decision of the Oregon Supreme Court, *Ivanov v. Farmers Ins. Co. of Oregon*, 344 Or. 421 (2008). The issue in *Ivanov* was whether an insurer's obligation to reimburse medical expenses under the Oregon PIP statute could be satisfied by the use of "automatic medical cost containment software based on generalized, preplanned criteria not specific to a claimant's particular injuries." *Id.* at 426. The insurer had been granted summary judgment on the basis that the plaintiff had not presented sufficient evidence to support a finding that the expenses were necessary. The Oregon Supreme Court remanded, holding that

> it is not the validity of Farmers' claim *denials* that plaintiffs seek to challenge in this action. Instead, plaintiffs challenge the sufficiency of Farmers' investigation of their claims *before* Farmers' issued its denials, i.e., they challenge Farmers' actions or lack thereof at the time the claims were presume

*Id.* at 429.

> [B]ecause the gravamen of plaintiffs' complaint was that Farmers' review methodology was an impermissible one, Farmers needed to establish that the procedures it employed to deny plaintiffs' claims satisfied its statutory

---

[8] In a more defensive posture, McGovern concedes that while "a 'fee audit' is not specifically prohibited by section 34M, it does not alter the fact that it "is repugnant to its true spirit and intent as gathered from the whole instrument, . . . ." Opp'n Mem. at 11n.11, citing *Perry v. City of Keene*, 56 N.H. 514, 1876 WL 5274, at *4 (N.H. 1876), and *Leominster Materials Corp. v. Board of Appeals of Leominster*, 42 Mass. App. Ct. 458, 462 (1997). I do not see the merits of the argument or the relevance of the cited cases.

and common-law duties and did not violate the prohibition set out in ORS
746.230(1)(d).

*Id*. at 430-431.

However, the *Ivanov* decision is wholly distinguishable: the Oregon statute contains an express presumption that medical bills once submitted are reasonable and necessary unless the insurer denies the claim within sixty days of receipt. *Id.* at 427. As Metropolitan correctly points out:

> [t]he Oregon statute, unlike the Massachusetts statute, states: "Expenses of medical, hospital, dental, surgical, ambulance and prosthetic services shall be presumed reasonable and necessary. . . . " *Ivanov*, 185 P.3d at 427 (quoting ORS 742.520). The court in *Ivanov* further relie[d] upon the Oregon statute that provides for the effect of the presumption, which is that: "In civil actions and proceedings, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Id. at 429 (citing ORS 40.120). The Massachusetts PIP statute nowhere includes such a presumption.

Reply Mem. at 11. *Compare Excel Physical Therapy, Inc. v. Commerce Ins. Co.*, 2011 WL 1167214, at *2 n.6 (Mass. App. Div. Mar. 22, 2011) ("[A] plaintiff has the burden [under the PIP provisions] of proving coverage, injury, the medical necessity of the treatment for the injury and the reasonableness of its costs, the incurring of those medical expenses within two years of the accident, and the presentation of the bills to the insurer for payment.").

**The Sufficiency of Metropolitan's EOB Challenge**

McGovern also claims that Metropolitan's EOB "is not equivalent to a finding of 'unreasonableness.'" Opp'n Mem. at 6. The first response to this argument is that there is nothing in the statute that requires that an insurer incant the term "unreasonable" when challenging a provider's bill. Metropolitan's EOB explains that the "amount allowed is based on provider charges within the provider's geographic region," and that the amount is "based on usual and customary fees." In *MetroWest Med. Assocs. v. Premier Ins. Co.,* 2011 WL 1283541, at *3 (Mass. App. Div. Mar. 23, 2011), the court apparently found similar language ("allowable fees are calculated according to geographical and economical zones") to give sufficient notice under section 34M that an appropriate fee review had been conducted. In considering similar EOB language in *St. Louis Park v. Fed. Ins. Co.*, 342 Fed. Appx. 809, 2009 WL 2171221 (3d Cir. July 22, 2009), the Third Circuit held that a claim challenging a computer bill review method failed to state a cause of action. The EOB language, which also was based on a computerized auditing system's determination of claim reimbursement, stated: "that the [submitted] charges are compared to the prevailing billing practices for medical providers within the geographic area . . . ." *Innovative Physical Therapy v. Metro. Prop. & Cas. Ins. Co.*, 2008 WL 4067316, at *1 (D.N.J.

Aug. 26, 2008), *aff'd on other grounds*, *St. Louis Park*, 2009 WL 2171221.[9]

**Breach of Good Faith and Fair Dealing**

An insurance company is held to the duty of good faith and fair dealing under Mass. Gen. Laws ch. 176D, § 3(9), whether with respect to its insured or a third-party claimant standing in the shoes of the insured. *See Bobick v. United States Fid. & Guar. Co.*, 439 Mass. 652, 658-659 (2003). McGovern claims that Metropolitan's use of the Ingenix data rather than "permissible methods under § 34M" to deny full payment of PIP charges breaches this duty of good faith and fair dealing. Opp'n Mem. at 11 & n.6. McGovern alleges that Metropolitan "knew, or reasonably should have known [that an Ingenix bill audits] (a) did not provide or purport to provide 'reasonable' charges for medical services; (b) were flawed, biased, and unreliable; and (c) were not to be used for the purpose of denying or reducing claims for medical expenses." Second Am. Compl. ¶ 63.

There are, however, no facts pled to support these allegations. At most, the Second Amended Complaint adverts to two instances where Ingenix was publicly discredited – both unrelated to Metropolitan and occurring subsequent to the underlying

---

[9] In a case cited perhaps unwittingly by McGovern, the court recognized that a review of a medical bill for reasonableness means a review to determine "whether it was both 'usual and customary.'" *Strawn v. Farmers Ins. Co. of Or.*, 209 P.3d 357, 362 (Or. Ct. App. 2009).

facts in this case. First, McGovern cites testimony before a United States Senate Committee in which UnitedHealth Group's CEO acknowledged the existence of a conflict of interest in his company's relationship with Ingenix (a UnitedHealth subsidiary). The Second Amended Complaint recounts UnitedHealth's January 2009 agreement with the New York Attorney General (along with several other insurance companies) to cease using the existing Ingenix database to determine "usual and customary" medical charges.[10] McGovern also cites an August of 2008 federal district court opinion in which a New Jersey judge found that the Ingenix database is flawed because of "data collection and sampling errors."[11] Second Am. Compl. ¶ 19. However, Metropolitan's EOB and reduced payment was sent to McGovern in October of 2007, seventeen months prior to the Senate Committee hearing (March of 2009) and

---

[10] The Second Amended Complaint states that UnitedHealth agreed to pay $350 million to reimburse patients and health care providers who received reduced payments as a result of an Ingenix "review" of their medical bills.

[11] In *McCoy v. HealthNet, Inc.*, 569 F. Supp. 2d 448 (D.N.J. 2008), current and former subscribers with point-of-service plans brought a class action against their health care insurer (Healthnet), because of its handling of their out-of-network claims. In a decision approving the parties proposed settlement agreement, the court found that the Ingenix database was erring in its data sources and the number of data points collected for each medical procedure; its "scrubbing" of the data; and its method of standardizing charges. *Id.* at 465. The court found that "the end result is that Health Net reimburses insureds based on an artificially low rate used to reflect UCR." *Id.* at 468.

nearly a year before the New Jersey court's finding (August 8, 2008). There are no facts averred to suggest that Metropolitan should have been on notice at the time it paid McGovern's physical therapy charges that the Ingenix database was unreliable.[12] These post facto allegations are clearly insufficient to support a claim that Metropolitan acted in bad faith in employing the Ingenix data to review providers' charges within McGovern's geographic locale.

**Count VI - Violation of Mass. Gen. Laws ch. 93A, §11**

Finally, McGovern asserts that Metropolitan committed an unfair and deceptive act in violation of Mass. Gen. Laws ch. 93A, § 11, by "reducing [its] PIP claim for medical expenses without finding them to be unreasonable and solely on the basis of the Ingenix audit . . . ." Second Am. Compl. ¶ 68. A deceptive act must be a proximate cause of a loss of money or property or some other adverse harm to a plaintiff to sustain a claim under § 11. *See Massachusetts Farm Bureau Fed'n, Inc. v. Blue Cross of Massachusetts, Inc.*, 403 Mass. 722, 730 (1989); *Shepard's Pharmacy v. Stop & Shop Co.s, Inc.*, 37 Mass. App. Ct. 516, 522 (1994). Because there is no plausible allegation in the Second Amended Complaint that Metropolitan acted deceptively, there is no basis for a section 11 claim. It is well established that

---

[12] There is no allegation in the Complaint of an affiliation or other connection between UnitedHealth Group and Metropolitan.

the mere refusal to pay a bill because one disputes its amount does not give rise to Chapter 93A liability. *See Commercial Union Ins. Co. v. Boston Edison Co.*, 412 Mass. 545, 556-557 (1992); *Zabin v. Picciotto*, 73 Mass. App. Ct. 141, 169 (2008).

**Motion to Dismiss or Strike Class Action Allegations**

As none of McGovern's individual claims survive, this motion is MOOT.

ORDER

Based on the foregoing reasons, Metropolitan's Motion to Dismiss is ALLOWED. The Clerk will enter the dismissal and close the case.

SO ORDERED.

s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE